| | |
|---|---|
| **JACQUELYN PAGE, et al.,** | **UNITED STATES DISTRICT COURT** |
| **VERSUS** | **NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION** |
| **NISSAN MOTOR CO. LTD., et al.,** | **CIVIL: 3:25-CV-0023-S** |

**PLAINTIFF'S RESPONSE OPPOSING BIG BASS TOWING COMPANY AND MARTIN SERVICES'S MOTION TO DISMISS**

Plaintiffs submit the following Response Brief Opposing Big Bass Towing Company (hereinafter "BB Towing") and Martin Services' Motion to Dismiss.

## I. FACTS

1. Plaintiffs made the following allegations in their complaint[1]:

    9. On or about September 27, 2022, Jacquelyn Page, along with her two minor children, was lawfully operating her vehicle on the roadway heading southbound on Antioch Drive.
    10. Jacquelyn Page was operating a 2015 Ford Edge bearing VIN: 2FMTK3K95FBB43730 manufactured by Ford (hereinafter referred to as "the Ford motor vehicle") with OP and EP seated as guest passengers in the vehicle.
    11. Jacquelyn Page was making a left turn onto Lakeview Parkway (SH 66) (hereinafter referred to as "the roadway"), when suddenly and without warning, Tortfeasor—who was operating his vehicle westbound on Lakeview Parkway (hereinafter referred to as "the roadway")—crossed the center median, crossed over into westbound traffic and violently struck Plaintiffs on the rear passenger side of her vehicle (hereinafter referred to as "the subject incident").
    12. At the time of the subject incident, Tortfeasor was operating a 2017 Nissan Rogue bearing VIN: KNMAT2MT4HP555810 manufactured by Nissan (hereinafter referred to as "the Nissan motor vehicle"), on an employment-related task with permission of Employer, in the course and scope of employment with Employer on the roadway, when Tortfeasor's vehicle struck the vehicle driven and occupied by Plaintiffs causing Plaintiffs' injuries and damages.
    13. Plaintiff was totally free from any fault whatsoever in causing or contributing to the crash.
    14. The motor vehicle was towed from the crash site by [BB Towing] to its storage facility located at 5161 Boyd Blvd. in Rowlett, Texas.
    15. Nissan manufactured the Nissan motor vehicle in such a way that caused it to ignore all user controls resulting in the subject incident.
    16. Ford manufactured the Ford motor vehicle in such a way that caused the safety systems to fail to protect its occupants.
    17. Graco manufactured the child safety seat, identified as the Graco Slim-Fit 3 in 1 Convertible car seat, that was used and allegedly protecting EP during the subject incident.

---

[1] The Complaint inadvertently referred to both Martin Services and Big Bass Towing Company as "Wrecker." This restatement from the Complaint clarifies which defendant played what role in the events forming the basis of the complaint.

18. Chicco manufactured the child safety seat, identified as the Chicco Next Fit Zip Max car seat, that was used and allegedly protecting EP during the subject incident.
19. Ford and Nissan manufactured the Nissan motor vehicle and the Ford motor vehicle, but designed the product in such a way that it was hazardous/dangerous to the user, like Tortfeasor, and manufactured the product without removing that hazard/danger/risk and failed to warn Tortfeasor the product would prevent the safe operation of a motor vehicle.
20. Graco and Chico manufactured the respective child safety seats, but designed them in such a way that it was hazardous/dangerous to the user, like Tortfeasor, and manufactured the product without removing that hazard/danger/risk and failed to warn Tortfeasor the product would prevent the safe operation of a motor vehicle.
21. Graco, Chicco, Ford and Nissan, despite being aware of this hazard/danger/risk, allowed their respective product to remain on the market and failed to issue a warning to users at any time.
22. The child safety seats for each child were manufactured by Graco and Chicco, were inside the vehicle when it was transported to [BB Towing]'s storage facility and were preserved at that site.
23. Plaintiffs were attempting to arrange inspection of the motor vehicle and placed the Rowlett Police Department on notice of same and sent a preservation of evidence letter which Rowlett Police Department received, acknowledged and ignored.
24. Following the subject incident, [BB Towing and Martin Services were] notified to preserve all evidence from the crash; including, the motor vehicle and the child safety seats.
25. [BB Towing and Martin Services were] contacted on numerous occasions by Plaintiffs discussing the preservation of such evidence.
26. [Martin Services] provided a contract to Plaintiff to preserve the vehicle to which Plaintiff agreed and acknowledged same.
27. Plaintiff was contacted on numerous occasions by [Martin Services] advising [that Martin Services] intended to breach its contract and auction the motor vehicle.
28. Plaintiff was notified by [Martin Services] of the auction date for the motor vehicle and Plaintiff denied authorization for the sale, auction and disposal of the vehicle, including the child safety seats.
29. [Martin Services] acknowledged to Plaintiff it would not sell the motor vehicle.
30. Despite the existence of a contract and payment of all fees, [Martin Services] contacted Seller to advertise and auction the vehicle.
31. Seller took possession from [Martin Services], then sold and disposed of the motor vehicle and child safety systems.
32. This resulted in the impairment and prevention of personal injury claims against auto manufacturers for safety systems failures.
33. While acting under the color of the law, Rowlett [Police Department] violated Plaintiffs' constitutional rights by unreasonably seizing and destroying evidence which resulted in Plaintiffs' injuries.
34. Hardman knowingly released the motor vehicles despite clear awareness that the evidence was required for preservation of Plaintiffs' claims and was aware of the severity of their injuries warranting investigation into all angles of liability and

fault into the cause of the subject incident.
35. Hardman knowingly and consciously ignored those duties and the obligation to preserve evidence.
36. Rowlett [Police Department]'s actions violated the constitutional rights guaranteed to Plaintiff by the Fourth Amendment of the United States Constitution.
37. Rowlett [Police Department]'s actions were not taken in good-faith and were in violation of clearly established law.
38. Rowlett [Police Department]'s actions were unnecessary, unreasonable, unlawful, and unjustified.
39. Rowlett [Police Department]'s actions, and possibly other employees, agents, and/or representatives of the Rowlett Police Department, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.
40. Rowlett [Police Department] is the law enforcement agency in the City of Rowlett, Texas.
41. The Chief of Rowlett is the "policymaker" with respect to the police department, as a law enforcement agency.
42. Municipal liability can attach under Monell v. Department of Social Services, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly.
43. Hardman and other officers have a pattern, as does Rowlett [Police Department], of ignoring preservation claims and regularly engage in a pattern of unlawful vehicle releases resulting in impairment of civil claims, despite notice to not do so.
44. If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell.
45. Chief, as the chief of police and policymaker for the City of Rowlett, has a custom, pattern, practice, and/or procedure of hiring police officers who he knows have committed acts of violence and/or have a propensity to do so.
46. When these officers inevitably destroy evidence while working for Rowlett [Police Department], Chief ratified would ratify their unconstitutional acts and assist in covering up the officer's bad actions by alleging the evidence did not exist or refusing to engage in production of requested evidence.
47. As evidence of the above-stated custom, pattern, practice, and/or procedure, Rowlett [Police Department] knew that Hardman failed to previously preserve evidence and released cars105. As a direct and proximate result of the WPD's customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiff's rights guaranteed to him by the Fourth Amendment of the United States Constitution were violated.
48. Pursuant to Monell v. Department of Social Services of New York, 436 U.S. 658 (1978), Rowlett, through its policymaker, Chief (and possibly other policymakers whose identities are not yet known) is liable for the harms and losses sustained by Plaintiffs.

## II.  RULE 12(b)(6) STANDARD

3. A plaintiff need only give fair notice of a claim by providing a short and plain statement of the claim showing that the plaintiff is entitled to relief. See FRCP 8(a)(2); Erickson v. Pardus, 551 U.S. 89, 93 (2007); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kensu v. Corizon, Inc., 5 F.4th 646, 650 (6th Cir.2021); see Renfro v. Unisys Corp., 671 F.3d 314, 320 (3d Cir.2011); see also Barmapov v. Amuial, 986 F.3d 1321, 1324–25 (11th Cir.2021). A plaintiff is not required to provide detailed factual allegations; the statement of the claim need only include plausible factual allegations concerning all material elements of the claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); McCleary-Evans v. Maryland DOT, 780 F.3d 582, 586–87 (4th Cir.2015); Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir.2009). Thus, to avoid a dismissal under FRCP 12(b)(6), the plaintiff need only (1) give the defendant fair notice of the nature of the claim and (2) provide plausible factual allegations to support the claim. Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir.2014); Adams v. City of Indianapolis, 742 F.3d 720, 728–29 (7th Cir.2014); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir.2011); see Iqbal, 556 U.S. at 678–79; Erickson, 551 U.S. at 93; Twombly, 550 U.S. at 555–56 & n.3.

4. Fair notice means including allegations that outline the elements of the claim. See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.2011); Brooks v. Ross, 578 F.3d 574, 581 (7th Cir.2009). The plaintiff's factual allegations need only notify the defendant of the nature and basis of the claim and the type of litigation involved. Topchian v. JPMorgan Chase Bank, 760 F.3d 843, 848 (8th Cir.2014); Burlington Indus. v. Milliken & Co., 690 F.2d 380, 390 (4th Cir.1982); see Erickson, 551 U.S. at 93; Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1347 (Fed.Cir.2018); Stanard v. Nygren, 658 F.3d 792, 797 (7th Cir.2011).

5. The factual allegations supporting the elements of the claim need only be plausible. See Iqbal, 556 U.S. at 678–79; McCleary-Evans, 780 F.3d at 585–86. A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the

defendant is liable for the alleged misconduct. See, e.g., Speaker v. U.S. Dept. of H&HS Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1384–85 (11th Cir.2010) (P's claim for Privacy Act violation crossed "line from conceivable to plausible" when P's complaint alleged the what, when, and how of D's violation). Plausibility does not mean likely success on the merits. Sepúlveda-Villarini v. Department of Educ. of P.R., 628 F.3d 25, 30 (1st Cir.2010). In other words, the nonconclusory factual allegations, which are generally assumed to be true, need only show that the plaintiff's right to relief is more than mere speculation. Twombly, 550 U.S. at 555–56; Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007); see Iqbal, 556 U.S. at 678–79; Starr, 652 F.3d at 1216; Brooks, 578 F.3d at 581; see also Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 184 (2d Cir.2012) (in antitrust-conspiracy case, P need not show that its allegations are more likely than not true or rule out other possible scenarios; D's actions can be subject to different interpretations, each of which is plausible).

6. The plausibility determination should be made for the claim as a whole, not for each individual allegation. Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir.2012); see Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir.2013) (there does not need to be one-to-one relationship between any single allegation and a necessary element of cause of action); see also Lynch v. City of N.Y., 952 F.3d 67, 75 (2d Cir.2020) (because plausibility is lower standard than probability, allegations can be subject to diverging but plausible interpretations; choice between plausible inferences or scenarios is for fact-finder). The complaint does not need to specify the legal theory of recovery or demand specific relief. See FRCP 54(c); Johnson v. City of Shelby, 574 U.S. 10, 11 (2014); Topchian v. JPMorgan Chase Bank, 760 F.3d 843, 848–49 (8th Cir.2014); Gilbane Bldg. Co. v. Federal Reserve Bank, 80 F.3d 895, 900 (4th Cir.1996); Schott Motorcycle Sup. v. American Honda Motor Co., 976 F.2d 58, 62 (1st Cir.1992); see, e.g., Peterson v. Bell Helicopter Textron, Inc., 806 F.3d 335, 340–41 (5th Cir.2015) (although specific relief does not have to be

demanded, P was not entitled to injunctive relief that was sought and granted after final judgment because D was unduly prejudiced by P's failure to demand injunctive relief earlier); see also Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir.2004) (P is not required to separate its claims by D). The court should examine the complaint to determine if the allegations provide for relief on any possible theory. Topchian, 760 F.3d at 848–49.

### III. AUTHORITY AND ANALYSIS

   A. Plaintiffs have pled facts sufficient to present plausible claims against BB Towing and Martin Services for destruction of evidence/third-party spoliation, both directly and on the basis of civil conspiracy.

7. Plaintiffs' allegations for Violation of Civil Rights, Destruction of Evidence/Third-Party Spoliation, Conversion; Fraud and Misrepresentation, Deceptive Trade Practices Act, and Fraudulent Inducement present plausible claims because the facts taken as true support the assertion of both direct liability for those claims and liability for conspiracy.

8. The existence of independent claims for spoliation of evidence against parties to a lawsuit has been answered in the negative, but the existence of claims for spoliation of evidence against third-parties, intentional or negligent, is an open question in Texas. McIntyre v. Wilson, 50 S.W.3d 674, 685 (Tex. App.--Dallas 2001).

9. A third-party has a duty to preserve evidence when two elements are met: 1) a duty to preserve evidence may arise through an agreement, a contract, a statute, or another special circumstance, or where a defendant voluntarily assumes a duty by affirmative conduct, which element is commonly referred to as the "relationship prong," and 2) once a plaintiff proves the relationship prong, the plaintiff must establish the "foreseeability prong," under which the plaintiff must demonstrate that a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action. Village of Roselle v. Commonwealth Edison Co., 368 Ill. App. 3d 1097, 307 Ill. Dec. 1, 859 N.E.2d 1 (2d Dist. 2006); Fuller Family Holdings, LLC v.

Northern Trust Co., 371 Ill. App. 3d 605, 309 Ill. Dec. 111, 863 N.E.2d 743 (1st Dist. 2007), appeal denied, 225 Ill. 2d 632, 314 Ill. Dec. 824, 875 N.E.2d 1111 (2007) (defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action).

10. "The required elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." Henkel v. Emjo Investments, Ltd., 480 S.W.3d 1, 7 (Tex.App.–Houston [1st Dist.] 2011); JSC Neftegas–Impex v. Citibank, N.A., 365 S.W.3d 387, 420 (Tex.App.–Houston [1st Dist.] 2011, pet. denied).

11. In this case, plaintiff has pled that the Rowlett Police Department (hereinafter referred to as "Rowlett"), Officer Timothy Hardman (hereinafter referred to as "Hardman"), Chief Michel Denning (hereinafter referred to as "Chief"), Martin Services; BB Towing, and Rene Bates Auctioneers (hereinafter referred to as "RBA") were all involved in the taking, storing, and ultimate sale of the car in question and the car seats inside.

12. Communication necessarily had to occur for that to happen. It is easily inferred that during those conversations, BB Towing and Martin Services were directly aware of, or made aware of, the spoliation notices and contract for storage that plaintiffs made.

13. It is further easily inferred that BB Towing and Martin Services agreed to ignore all of the above at the request of the other defendants. In fact, these inferences must be taken as true in deciding BB Towing and Martin Services' motion.

14. As such, that makes BB Towing and Martin Services guilty of civil conspiracy with regard to plaintiffs' claims for Destruction of Evidence/Third-Party Spoliation, Conversion, Fraud and Misrepresentation, and Fraudulent Inducement. In essence, BB Towing and Martin Services are

equally liable for their own acts <u>and</u> all the acts of the other defendants by reason of conspiring with them to eliminate the car in question and its contents.

    B.   Plaintiffs have plausibly pled conspiracy for violation of civil rights.

15. The Fifth and 14th Amendments protect individual's right against the taking of property without due process and compensation therefore. Knick v. Township of Scott, 139 S. Ct. 2162, 2168-72 (2019).

16. A legal cause of action is property within the meaning of the Fifth Amendment Takings Clause. All. of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1481 (Fed. Cir. 1994); Cities Servs. Co. v. McGrath, 342 U.S. 330, 335–36, 72 S.Ct. 334, 337–38, 96 L.Ed. 359 (1952); Ware v. Hylton, 3 U.S. (3 Dall.) 199, 245, 1 L.Ed. 568 (1796).

17. Plaintiffs have pled facts from which reasonable inferences can be drawn that BB Towing, Martin Services, and the other defendants communicated about the disposing of the car and car seats at the center of this case. In so doing, BB Towing and Martin Services conspired with other defendants' to take Plaintiffs' right to recover for their serious injuries by destroying the primary proof of the other Defendants' liability, all after multiple spoliation notices and affirmatively agreeing not to destroy the car verbally and by contract.

18. The requirement of a special relationship is satisfied by Martin Services' agreement to preserve the car and its contents. Martin Services' breaking of that agreement directly damaged the property right Plaintiffs' have in their cause of action for injuries they sustained in the crash.

19. Scrapping the Plaintiffs' wrecked car, and the car seats inside, all but ended their chances of recovery, and lawsuits constitute property for purposes of the Takings Clause.

20. BB Towing and Martin Services played central roles in carrying out the destruction of the evidence in this case, and because they knew of the spoliation notices and contract for storage in place, are either directly liable or guilty of conspiracy.

  C. Plaintiff has pled facts sufficient to state a plausible claim for tortious interference with contract, and conspiracy to commit the same.

21. The elements of a claim for tortious interference with contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiffs injury, and (4) caused actual damages or loss." Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex.2000).

22. "To establish tortious interference with existing contract, a plaintiff is not limited to showing the contract was actually breached. Any interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable." Khan v. GBAK Props., Inc., 371 S.W.3d 347, 359–60 (Tex.App.–Houston [1st Dist.] 2012, no pet.) (emphasis added); see also Tippett v. Hart, 497 S.W.2d 606, 610 (Tex.Civ.App.–Amarillo 1973, writ ref'd n.r.e.) (including within the tort "not merely the procurement of a breach of contract, but all invasion of contract relations, including any act injuring or destroying persons or property which retards, makes more difficult or prevents performance"); Restatement (Second) of Torts §§ 766 & cmt. h & k, 766A (1979) (including within the tort instances when interference with the plaintiffs or third party's performance comes through preventing the performance or making performance impossible).

23. In this case, a contract existed between Plaintiffs and Martin Services to store the car in question and its contents. That contract was subject to interference when BB Towing and the other defendants willfully and intentionally cooperated to auction the car to make the evidence unavailable to support Plaintiffs' claims. Martin Services sale of the car proximately caused harm to Plaintiffs' ability to prove their case.

  D. Plaintiff has pled facts sufficient to state a plausible claim for fraud and misrepresentation, and conspiracy to commit the same.

24. The elements for a cause of action for fraud are as follows: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant either knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the defendant intended the plaintiff to act upon the representation; (5) the plaintiff acted in reliance of the representation; and (6) the plaintiff suffered injury thereby. See Zaidi v. Shah, 502 S.W.3d 434, 441 (Tex. App. – Houston [14th Dist.] 2016, pet. denied). In addition, the elements for a cause of action for negligent misrepresentation are: (1) the defendant made a representation to the plaintiff in the course of the defendant's business or in a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not use reasonable care in obtaining or communicating the information; and (5) the defendant's negligent misrepresentation proximately caused the plaintiff's injury. See JPMorgan Chase Bank v. Orca Assets G.P., L.L.C., 546 S.W.3d 648, 653-54 (Tex. 2018).

25. In the present case, BB Towing and Martin Services made a material representation to Plaintiffs that the car would be stored and not disposed of. The representation was false and they knew it was false because BB Towing, Martin Services, and the other defendants always intended to dispose of the car and the car seats inside. BB Towing, Martin Services, and the other Defendant intended the Plaintiff to act upon the representation by leaving the car and its contents in BB Towing, Martin Services, and the other defendants' possession, trusting them to store and not dispose of the car. The Plaintiffs acted in reliance on that representation which resulted in giving the BB Towing, Martin Services, and the other defendants time to auction the car.

26. These same facts satisfy the elements of misrepresentation. BB Towing, Martin Services, and the other Defendants made a representation to Plaintiffs in the course of entering a contract for the storage of the car and its contents. The car and its contents were central to proving Plaintiffs' tort

claims, which were against these same defendants. BB Towing, Martin Services, and the other defendants supplied false information for the guidance of Plaintiffs in pursuing their claims. Neither BB Towing, Martin Services, or the other Defendants used reasonable care in obtaining or communicating the information. BB Towing and Martin Services' negligent misrepresentation proximately caused injury to the Plaintiffs' ability to pursue tort claims against the Defendants. BB Towing and Martin Services were central to the conspiracy to deprive the Plaintiffs of this crucial evidence. Plaintiffs should be allowed to explore these matters in discovery.

    E.   Plaintiff has pled facts sufficient to state a plausible claim for conspiracy to commit Fraudulent Inducement.

27. "[A] claim for fraudulent inducement includes all of the elements of common-law fraud, plus elements that are specific to itself." Zaidi, 502 S.W.3d at 441; see also Mercedes-Benz USA, LLC v. Carduco, Inc., 583 S.W.3d 553, 557 (Tex. 2019). "Fraudulent inducement 'shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made.' To prevail in a fraudulent inducement claim, the plaintiff not only must establish all of the elements of a fraud claim, but must establish those elements 'as they relate to an agreement between the parties.'" Zaidi, 502 S.W.3d at 44 (quoting Zorrilla v. Aypco Constr. II, LLC, 469 S.W.3d 143, 153 (Tex. 2015); and Hasse v. Glazner, 62 S.W.3d 795, 798-99 (Tex. 2001)). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." Carduco, 583 S.W.3d at 527 (quoting Anderson v. Durant, 550 S.W.3d 605, 614 (Tex. 2018)).

28. In the present case, BB Towing and Martin Services made fraudulent representations to Plaintiffs with regard to preservation of the car and the car seats inside, and had no intention of keeping their promises to preserve the car and the car seats inside at the time they made the promises.

As a result, BB Towing and Martin Services are liable for fraudulent inducement and conspiracy to commit the same.

    F.   Plaintiff has pled facts sufficient to state a plausible claim for Unjust Enrichment or conspiracy to commit the same.

29. Unjust enrichment allows a plaintiff to recover money or property given to the defendant when the defendant has obtained a benefit from the plaintiff by fraud, duress, or taking undue advantage, or to recover when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other reasons. See Burlington N.R.R. v. Southwestern Elec. Power Co., 925 S.W.2d 92, 97 (Tex. App. – Texarkana 1996), aff'd, 966 S.W.2d 467 (Tex. 1998); see also Heldenfels Bros. v. City of Corpus Christi, 832 S.W.2d 39, 41-42 (Tex. 1992).

30. Here, the property in question was the car and its contents. BB Towing, Martin Services and the other Defendants obtained the car through fraud, duress, or taking undue advantage by saying the car would be stored and not disposed of.

    G.   Plaintiff has pled facts sufficient to state a plausible claim for conspiracy to commit Unjust Enrichment.

31. The elements of a Texas Tort Claims Act claim are the following: (1) the defendant is a governmental unit under the Act; (2) the defendant owed the plaintiff a duty; (3) the defendant breached its duty to the plaintiff; (4) the plaintiff's injury was caused by certain enumerated events; (5) the defendant would have been personally liable; and (6) notice was provided as required by the Act. See Tex. Civ. Prac. & Rem. Code § 101.021(1); Tex. Gov't Code § 311.034; DeWitt v. Harris Cty., 904 S.W.2d 650, 652-54 (Tex. 1995).

2. Insofar as BB Towing and Martin Services conspired with the other governmental defendants, BB Towing and Martin Services is liable for violation of the Texas Tort Claims Act.

### IV.  PRAYER

Plaintiff prays that Defendants' motion be denied.

Respectfully:
PATRICK DANIEL LAW

*/s/ Patrick Daniel*

PATRICK DANIEL
Trial Counsel For Plaintiff

Louisiana Bar Number 27753    Texas Bar Number 24089305    Wisconsin Bar Number:1117666

MAILING|7941 KATY FREEWAY, BOX 791; HOUSTON, TEXAS 77024
PHYSICAL|4801 WOODWAY DRIVE, SUITE 440-W, HOUSTON, TEXAS 77056

TELEPHONE: 713.999.6666    TELEFAX: 713.481.9884    service@patrickdaniellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response Opposing Big Bass Towing Company And Martin Services' Motion To Dismiss has been served on all counsel of record by e-filing/serving this 1st day of October, 2025.

/s/ Patrick Daniel
Patrick Daniel